## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| Randolph G. Johnson, | ) | Civil Action No.: 5:21-cv-00196 |
| | ) | |
| Plaintiff, | ) | **Judge** |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| Greenbrier Hotel Corporation, a/k/a The Greenbrier Resort, d/b/a Kate's Mountain Adventures, a/k/a Kate's Mountain Outfitters, | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now Randolph G. Johnson, Plaintiff, by and through his undersigned attorneys, brings this suit against Greenbrier Hotel Corporation, a/k/a The Greenbrier Resort, d/b/a Kate's Mountain Adventures, a/k/a Kate's Mountain Outfitters, Defendant, for negligence in violating W. Va. Code § 20-4-1 *et. seq.*, and gross negligence, and for cause of action avers as follows:

### PARTIES

1. Plaintiff Randolph G. Johnson (hereinafter "Johnson") is a natural person and at all times pertinent hereto has been resident and citizen of the State of Maryland.

2. Defendant, the Greenbrier Hotel Corporation (the "Greenbrier"), is a corporation organized and existing under West Virginia law with its principal place of business in White Sulphur Springs, West Virginia (Greenbrier County, West Virginia). The Greenbrier is also known as The Greenbrier Resort and, upon information and belief, is the operator of a recreational outfit known as Kate's Mountain Adventures, which also goes by the name of Kate's Mountain Outfitters.

3. This action arises out of personal injuries Johnson sustained while participating on a guided trail ride at the Greenbrier in conjunction with his stay at the resort.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1332 as the parties are citizens and residents of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the Greenbrier is subject to personal jurisdiction in this judicial district and a substantial part of the events or omissions giving rise to Johnson's claims arose in this judicial district.

## FACTUAL ALLEGATIONS

6. Johnson and his wife (hereinafter referred to as the "Johnsons") were guests of the Greenbrier on July 30, 2020.

7. The Greenbrier offers a plethora of activities for its guests, including guided horseback rides on paved trails on the resort's property.

8. The Johnsons learned of the guided trail ride activity through the Greenbrier's website, which was advertised as an activity that is appropriate for all riding levels that operates on paved paths exclusively on the Greenbrier's premises.

9. The Greenbrier's website promised that "experts will ensure a safe and memorable experience" for riders of all experience levels.

10. The Johnsons booked a guided trail ride for the morning of July 30, 2020.

11. At approximately 11:00 a.m. on July 30, 2020, the Johnsons checked-in for the guided group trail ride and were transported to an area where they met guides and were paired and fitted with the horses they would be riding.

12. Johnson completed registration paperwork provided by the Greenbrier and estimated his level of riding skill or experience as a "Beginner" which, per the form, meant "no previous experience."

13. In addition to the representations made on the Greenbrier's website, at check-in, the Greenbrier further confirmed to Johnson that the guided group trail ride was safe for all riding levels.

14. Johnson was paired by the Greenbrier with a horse named "Maverick."

15. The guide or staff person who fitted Maverick with riding gear struggled with the process; three adjustments to the stirrups were made and ultimately the stirrup on the right side of the horse (where Johnson situated his right foot) was one notch higher than that on the left side of the horse (where Johnson situated his left foot).

16. Johnson indicated that the stirrups did not feel right, but the guide or staff person assured him that they looked properly fitted and could later be adjusted, if necessary.

17. During the process of fitting Maverick, Maverick was bothering other horses, and the guide or staff person expressed to Johnson that Maverick was a rambunctious horse who is known to wander off the trail.

18. The Greenbrier did not operate the guided trail ride as normal on July 30, 2020; instead of using the normal trail, an alternate path was used, which at least for the portion of the ride that Johnson completed, was along the cart path of one of the Greenbrier's golf courses.

19. Approximately five minutes into the ride, the golf course's irrigation sprinkler system turned on.

20. None of the guides or staff persons warned Johnson of this potential hazard.

21. The trail guide attempted to avoid the sprinklers and instructed the riders to leave the cart path, line-up single file, and proceed up an embankment to move to another cart path that ran along an adjoining fairway.

22. The trail guide led the group over the embankment, proceeding first in line. Johnson was ordered last, with no guide or more experienced rider behind him.

23. As the guide and other riders proceeded up the embankment, a jet of water from the golf course sprinkler hit Maverick in his hind quarter area.

24. Maverick reared-up and took off up the embankment area, throwing Johnson off his back and approximately seven to eight feet behind him.

25. Johnson landed hard on his lower back and side. Among other injuries, Johnson suffered three fractured ribs.

26. Johnson experienced an intense amount of pain and immediately after being thrown from the horse. Johnson did not know the cause of the pain and inability to breathe that he was experiencing, which caused him distress and anxiety as he awaited medical attention.

27. The trail guide did not immediately call 911 to report Johnson's injuries. For reasons unknown to Johnson, the guide only called for Greenbrier's security. Only after Greenbrier's security reported to the scene did the Greenbrier call 911 and obtain medical assistance.

28. Johnson was taken by ambulance to the Greenbrier Valley Medical Center, where he received initial treatment, and has further continued treatment with his orthopedic surgeon in his area.

## COUNT ONE
**(Violation of the West Virginia Equestrian Activities Act, W. Va. Code § 20-4-1 *et. seq.*)**

29. Johnson realleges and incorporates herein the allegations contained in Paragraphs above.

30. At all times material hereto, the guides and/or staff people described herein were employees and/or agents of the Greenbrier.

31. The Greenbrier, through its employees and/or agents, and as a "horseman" owed a duty of care to Johnson, as a "participant," in an "equestrian activity," as defined by the West Virginia Equestrian Activities Responsibility Act at W. Va. Code § 20-4-2 (hereinafter referred to as "the Act"). Under § 20-4-3 of the Act, the Greenbrier owed Johnson duties to, *inter alia*:

> **(1) Make reasonable and prudent efforts to determine the ability of a participant to safely engage in the equestrian activity, to determine the ability of the horse to behave safely with the participant, and to determine the ability of the participant to safely manage, care for and control the particular horse involved;**
>
> **(2) Make known to any participant any dangerous traits or characteristics or any physical impairments or conditions related to a particular horse which is involved in the equestrian activity of which the horseman knows or through the exercise of due diligence could know;**
>
> **(3) Make known to any participant any dangerous condition as to land or facilities under the lawful possession and control of the horseman of which the horseman knows or through the exercise of due diligence could know, by advising the participant in writing or by conspicuously posting warning signs upon the premises; and**
>
> **(4) In providing equipment or tack to a participant, make reasonable and prudent efforts to inspect such equipment or tack to assure that it is in proper working condition and safe for use in the equestrian activity.**

32. The Greenbrier reaffirmed such duties in a document it provided to Johnson in advance of his ride, labeled *"The Greenbrier's Notice, Release and Indemnification for*

5

*Equestrian Activities*," a true and correct copy of which is attached hereto as <u>Exhibit A</u> and incorporated by reference herein (hereinafter referred to as the "Notice").

33. The Greenbrier, through its employees and/or agents, breached the duties it owed to Johnson, by:

   a. Failing to make known to Johnson the hazards and dangerous conditions that would present on the trail ride, including, but not limited to, industrial-type sprinklers with the ability to project water as far as the path of the trail ride (and beyond);

   b. Failing to warn riders, including Johnson, in a writing or by a sign conspicuously posting a warning of the known dangerous conditions along the trail ride that Johnson was a part of on July 30, 2020;

   c. Failing to exercise due diligence in discovery dangerous and/or hazardous conditions along the alternate path used for the trail ride that Johnson was a part of on July 30, 2020;

   d. Failing to make reasonable and prudent efforts to determine Maverick's ability to behave safely with Johnson under the conditions present;

   e. Failing to make reasonable and prudent efforts to determine the ability of Johnson to safely manage, care for and control Maverick under the conditions present;

   f. Failing to make reasonable and prudent efforts to determine Johnson's ability to safely engage in the equestrian activity under the conditions present;

   g. Failing to fully advise Johnson of any and all dangerous traits, characteristics, and/or physical impairments or conditions related to Maverick;

   h. Failing to exercise diligence in discovering any and all dangerous traits, characteristics, and/or physical impairments or conditions related to Maverick; and

   i. Failing to make reasonable and prudent efforts to inspect the tack and equipment provided to assure that it was in proper working condition and safe for use in the activity.

34. As a direct and proximate result of the Greenbrier and its' employees and/or agents, negligent and/or grossly negligent acts and omissions, and violations of the Act, Johnson suffered severe bodily injury and resulting pain and suffering, disability, mental anguish, loss of

capacity for the enjoyment of life, and incurred the expense of hospitalization, medical treatment, and physical therapy.

35. The patent failures of the Greenbrier to perform its statutorily mandated duties and the causal connection between the failures and Johnson's injuries subjects the Greenbrier to liability pursuant to § 20-4-5(a) of the Act.

## COUNT TWO
### (Gross Negligence)

36. Johnson realleges and incorporates herein the allegations contained in the Paragraphs above.

37. Pursuant to § 20-4-5(b) of the Act, and the language of the Notice (Exhibit A), the Greenbrier failed to satisfy its obligations as a horseman.

38. The Greenbrier's conduct in failing to follow its duties as outlined in its own document (Exhibit A) amounts to an utter disregard of prudence with regard to Johnson's safety, and this complete neglect of care constitutes gross negligence.

39. Johnson would show that the acts and omissions of the Greenbrier, including, but not limited to the dual purposing of golf cart paths for active golfing operations and group trail rides, without any regard to the hazards that might present from the other, constitutes gross negligence.

40. Johnson suffered severe bodily injury and resulting pain and suffering, temporary disability, mental anguish, loss of capacity for the enjoyment of life, and incurred the expense of hospitalization, medical treatment, and physical therapy as a direct and proximate result of the Greenbrier and its' employees and/or agents grossly negligent acts and omissions.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all issue so triable as a matter of right before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court, after a trial by jury, award to Plaintiff damages in the form of: (1) such sum as the jury believes will fully compensate him for the harm he suffered; (2) attorneys' fees and costs because the cause of action adumbrated in the Complaint arise from gross negligence; (3) punitive damages in such amount as the jury determines will adequately punish the Defendants for its utter disregard of prudence, amounting to a complete neglect for Plaintiff's safety and dissuade persons similarly situated in the future from behaving in like manner; and, (4) prejudgment and post judgment interest.

Plaintiff further prays for such other and further relief, both legal and equitable, this Court deems just and appropriate.

                                                  Respectfully Submitted for,
                                                  Plaintiff

                                                  By Counsel

*/s/ Charles W. Neely*
**Charles W. Neely (W.Va. Bar #13357)**
**NEELY & CALLAGHAN**
1337 Virginia Street, East
Charleston, WV 25301
Phone: (304) 343-6500
Fax:   (304) 343-6528
ChaseNeely@neelycallaghan.com

**WALKER GRESSETTE FREEMAN & LINTON, LLC**

**Jennifer S. Ivey (Fed ID# 12515)**
Direct: (843) 727-2216
Email: Ivey@WGFLLAW.com

**Vincent Joseph-Lee Grosso (Fed ID# 13444)**
Direct: (843) 727-2224
Email: VGrosso@WGFLLAW.com

*Pro Hac Vice Admission to be Applied For*

Mail:   P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200
Fax:    (843) 727-2238

**Counsel for Plaintiff Randolph G. Johnson**

March 31, 2021